## McAULIFFE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. RAILROAD'S NEGLIGENCE—EVIDENCE—SUFFICIENCY.

Where, in an action against a railroad for injuries to plaintiff by a train at a crossing, the evidence of plaintiff's witness tended to show that the train ran by the crossing at a high rate of speed, in violation of a city ordinance, and that the customary signals were not given, and that no gates were provided, the jury were justified in finding the defendant negligent.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Where, in an action against a railway for injuries to plaintiff at a crossing, it appeared that the headlight of the approaching train must have been in plain view of plaintiff at the time he went upon the track, and less than 200 feet from him, though the train did not give the customary signals, and though plaintiff looked in the direction of the train, but testified he did not see it, he was guilty of contributory negligence.

Appeal from Trial Term, Onondago County.

Action by Matthew D. McAuliffe against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

A. H. Cowie, for appellant.
Ray B. Smith, for respondent.

SPRING, J.   The plaintiff, a man 29 years of age, while crossing Washington street at its intersection with Walnut street, in the city of Syracuse, on the evening of February 6, 1902, was struck and injured by a west-bound passenger train on the defendant's road.   Two of the defendant's parallel tracks pass along Washington street, and their course for some distance is substantially east and west, and they cross Walnut street at grade.   Plaintiff was familiar with this crossing, and at the time of the accident was employed in a saloon at the northeast corner of Washington and Walnut streets.   About half past 6 in the evening he crossed to the south side of Washington street, and walked a short distance to the east along the south side of the street, returning along the same course.   While on his return, a freight train of 8 or 10 cars was going east on the south-bound track.   When plaintiff reached the street curb, he stopped, and waited for the freight train to pass, and remained standing there until it had gone 100 to 150 feet beyond him, when, as he testified, he looked toward the east, but saw no train except the rear lights on the freight train which had just passed.   He then walked along the crossing, and when at the south rail of the south track again looked to the east, but discovered no train coming.   He continued over the south track, the space intervening the two tracks, and when on the south track was hit by a passenger train going west at the speed of 25 miles an hour, and sustained injuries from which he still claims to be suffering. The view toward the east was entirely unobstructed for over 1,100 feet to the plaintiff, from the curb.   The distance from which an approaching train from the east could be observed at this crossing increased as one neared the north-bound track.   There are trees along the south side of Washington street, but they do not hide an oncoming train from a pedestrian after he has reached the street curb.   The headlight was lit on this train, but the electric light at the street intersection may have been out at the time of the collision.

The jury were justified from the evidence in imputing negligence to the defendant, in that it failed to operate its train properly as it approached this street crossing.   The testimony of the plaintiff and his witnesses tends to show that the train ran along this street in the populous part of the city at a high rate of speed, in defiance of the city ordinance, which limited the rate to a mile in eight minutes; that the ordinary signals were not given as it approached this crossing, although no gates or flagman were provided to protect travelers. From these circumstances the evidence is ample to establish the negligence of the defendant.

The serious infirmity in the plaintiff's case is his own want of care in going over this crossing.   He was an active man, in full possession of his faculties.   He was thoroughly familiar with the crossing, and knew the north track was used by west-bound trains.   He testified that, after the freight train had passed him 150 feet, he looked toward

the east, and then started to cross over. When he reached the south rail of the east-bound track, he looked toward the east again, and saw the lights of the outgoing train, but did not observe the approaching train. He then went across this track and the intervening space, and was hit while on the west-bound track. The distance from the south rail of the first track to the corresponding rail of the adjacent track was less than 12 feet, and when he was at the south rail the approaching train was probably less than 200 feet from him. In any event, it must have been in plain view. This affords another illustration, which has become quite common, of a traveler at a crossing looking directly at the flaring headlight of an approaching train, and still be unmindful of its presence. We apprehend a traveler approaching a railroad crossing knowing that a train is liable to pass at any time does not fulfill the obligation resting upon him to exercise care and caution by "looking," but not seeing. As was said by this court in Swart v. N. Y. C. & H. R. R. R. Co., 81 App. Div. 402, 407, 80 N. Y. Supp. 906, 909:

"It cannot be that 'look' simply means that a person with his eyes open shall turn his head in a particular direction. The word, as used and understood in the decisions, must mean that he 'looked' intelligently, and in such manner that what his vision disclosed might influence his action or conduct."

While the fact of the defendant's failure to give the customary warnings at a street crossing, and the reliance which a traveler may be expected to place upon their being given, must inevitably enter somewhat into the consideration of the question of the freedom of the traveler from fault, the duty is still present with him to be cautious and vigilant when he approaches a railroad crossing realizing that a train may pass at any moment. The plaintiff apparently appreciated the necessity of vigilance, but urges that he lived up to it in full measure by looking directly at the train, even though he did not see it. This perfunctory performance of the vigilance required of him was not sufficient. Fiddler v. N. Y. C. & H. R. R. R. Co., 64 App. Div. 95, 71 N. Y. Supp. 721 (a case closely akin to the present one in its facts); Daniels v. S. I. R. T. Co., 125 N. Y. 407, 26 N. E. 466. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted upon questions of law only, with costs to the appellant to abide the event. All concur.